```
IN THE UNITED STATES DISTRICT COURT FOR THE
         SOUTHERN DISTRICT OF GEORGIA
              AUGUSTA DIVISION
```

MICHAEL WORKMAN, individually  *
and for others similarly       *
situated,                      *
                               *
       Plaintiff,              *
                               *      CV 120-070
       v.                      *
                               *
HIRE TECHNOLOGIES, INC.,       *
                               *
       Defendant.              *

# O R D E R

Before the Court is Defendant Hire Technologies, Inc.'s ("Hire") motion to compel arbitration and stay action. (Doc. 13.) For the following reasons, the motion is **GRANTED**.

## I. BACKGROUND

**A. Procedural Posture**

On May 26, 2020, Plaintiff filed suit against Hire alleging Hire did not pay him, and other workers like him, overtime pay as required by the Fair Labor Standards Act ("FLSA"). (Compl., Doc. 1, at 1.) The complaint alleges the company's "straight time for overtime" policy violates the FLSA overtime provisions and defines the class bringing suit as "All employees of Hire Technologies, Inc. who were paid 'straight time for overtime' in the past three years." (Id. at 4.) Defendant Hire filed an answer to the complaint on July 14, 2020 (Doc. 12) and simultaneously filed a

motion and brief in support to compel arbitration and stay the action (Docs. 13, 14). Plaintiff filed an opposition to the motion to compel arbitration on July 28, 2020 (Pl.'s Resp. in Opp'n to Mot. to Compel Arbitration, Doc. 17), and Defendant filed a reply brief in support of its motion to compel arbitration on August 11, 2020 (Doc. 19). Defendant's motion is now ripe for the Court's review.

**B. Employee Agreement and Mutual Arbitration Agreement**

Plaintiff Workman is currently an hourly employee of Hire in Burke County, Georgia at the Vogtle Nuclear Plant. (Compl., at 1-2.) In November 2019, after Hire was involved in FLSA litigation with another employee, it circulated an updated employee agreement to all its employees, including Plaintiff, that contained a Mutual Arbitration Agreement. (Pl.'s Resp. in Opp'n to Mot. to Compel Arbitration, at 2.) The updated agreement came with an explanatory letter and a copy of the agreement and Mutual Arbitration Agreement. (Doc. 14-1, at 5.) The arbitration agreement provides in relevant part:

> Except as provided below, Employee and the Company both agree that all legal disputes, controversies and claims ("claims") between them . . . shall be determined exclusively by final and binding arbitration before a single, neutral arbitrator as described herein . . . . Employee and the Company voluntarily waive all rights to litigation or trial in court before a judge or jury on all legal claims between them.

(Id. at 9, ¶ (a).) There is also a class action waiver provision that "prohibits the arbitrator from consolidating the claims of

2

multiple claimants into one proceeding" and states "[t]he parties expressly waive any right to seek relief on behalf of anyone other than themselves regarding any dispute covered by [the] [a]greement." (Id. at 10, ¶ (g).) This waiver also contains a requirement that any disputes about the waiver are to be decided by a court, and not the arbitrator. (Id.) The agreement further explains that by signing the agreement, the employee "acknowledges that he or she is knowingly and voluntarily waiving the right to file a lawsuit relating to Employee's employment with the Company as well as the right to resolve disputes in a proceeding before a judge or jury, except as described [therein]." (Id. ¶ (l).) Plaintiff signed the updated employee agreement, therefore agreeing to all included terms. (Id. at 11-12.)

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") "embodies a liberal federal policy favoring arbitration agreements." Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005) (internal quotations and citations omitted). The FAA requires courts to "rigorously enforce agreements to arbitrate." Davis v. Prudential Sec., Inc., 59 F.3d 1186, 1192 (11th Cir. 1995) (quoting Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987)). The Supreme Court has "made clear that the strong federal preference for arbitration of disputes expressed by Congress in the [FAA] must be enforced when possible." Musnick v. King Motor

Co. of Fort Lauderdale, 325 F.3d 1255, 1258 (11th Cir. 2003). Further, the Supreme Court found "the FAA applies to all arbitration agreements involving interstate commerce, including employment contracts . . . ." Id. at 1258 n.2 (citing Circuit City Stores, Inc. v. Adams, 532 U.S. 105 (2001)).

"[T]he party seeking to compel arbitration has the initial burden of producing the arbitration agreement and establishing the contractual relationship necessary to implicate the FAA and its provisions granting [the court] authority to dismiss or stay [the plaintiff's] cause of action and to compel arbitration." Compere v. Nusret Miami, LLC, 396 F. Supp. 3d 1194, 1199 (S.D. Fla. 2019) (citation and internal quotation marks omitted). If the party for arbitration meets its burden of production, the burden shifts to the party opposing arbitration to show why the court should not compel arbitration. Bhim v. Rent-A-Ctr., Inc., 655 F. Supp. 2d 1307, 1311 (S.D. Fla. 2009).

### III. DISCUSSION

The Court has subject matter jurisdiction over this dispute because it arises under federal law, namely the FLSA.[1]

---

[1] The FAA "does not confer subject matter jurisdiction nor does it create independent federal question jurisdiction." Sunpoint Sec., Inc. v. Porta, 192 F.R.D. 716, 718 (M.D. Fla. 2000) (citation omitted). Therefore, "[i]ndependent grounds for subject matter jurisdiction must be demonstrated." Id.

**A. FAA**

The Mutual Arbitration Agreement specifies that the FAA governs the agreement. (Doc. 14-1, at 9, ¶ (a).) Plaintiff and Defendant are in an employment relationship and the Eleventh Circuit has held that "[a]rbitration agreements contained in employment contracts are generally enforceable." Hernandez v. Acosta Tractors Inc., 898 F.3d 1301, 1304 (11th Cir. 2018) (citing Circuit City, 532 U.S. at 119). Therefore, the Court finds the arbitration agreement here is governed by the FAA. But, "[a]lthough the validity of an arbitration agreement is generally governed by the FAA, state law generally governs whether an enforceable contract or agreement to arbitrate exists," which will be addressed below. Gates v. TF Final Mile, LLC, No. 1:16-CV-0341, 2020 WL 2026987, at *5 (N.D. Ga. Apr. 27, 2020) (citing Caley, 428 F.3d at 1367-69).

Defendant, as the party seeking to compel arbitration has satisfied its initial burden of production by producing a copy of the Mutual Arbitration Agreement (Doc. 14-1) and establishing the contractual relationship necessary to implicate the FAA and the authority of the Court. Based on this, the burden shifts to Plaintiff, as the party opposing arbitration, to show why the Court should not compel arbitration.

**B. Validity of Mutual Arbitration Agreement**

Plaintiff contends (1) the arbitration agreement was imposed on the employees while other FLSA litigation was pending, making

5

the agreement unenforceable, (2) the arbitration agreement is an unenforceable contract of adhesion that restricts Plaintiff into a forum where the expense of pursuing his claim far exceeds the amount in controversy, and (3) the arbitration agreement is unconscionable under Alabama law.

1. Other Pending Litigation

Plaintiff string cites cases that have "universally determined the communications with potential class members to impose after-the-fact arbitration agreements are improper and that the arbitration agreements themselves are unenforceable." (Pl.'s Resp. in Opp'n to Mot. to Compel Arbitration, at 3.) Notably, Plaintiff cites an Eleventh Circuit decision that held an arbitration agreement of which the "purpose and effect" was to protect the company in an *ongoing lawsuit* was "replete with deceit" and "designed to be intimidating and coercive" and therefore, unconscionable as a matter of law. Billingsley v. Citi Trends, Inc., 560 F. App'x 914, 919 (11th Cir. 2014) (emphasis added).

The facts of the Billingsley case are different than the instant facts. First, the complaint in that case was filed before the arbitration agreement went into effect and because of that timeline, the motion to compel arbitration was denied due to concerns that the company's arbitration policy "undermined the court's authority to manage the collective action." See Billingsley, 560 F. App'x at 918, 922. Conversely, in this case, the arbitration agreement was put into effect six months before

6

the present complaint was filed by Plaintiff. Defendant admits that this agreement was put into place because of the <u>Varner</u> lawsuit that was filed and settled, but that was an entirely separate suit.² (Doc. 19, at 2.) Plaintiff was aware of the arbitration policy months before initiating this lawsuit, making the arbitration agreement at issue very different, and less coercive, than the situation in <u>Billingsley</u>. Had Defendant attempted to compel arbitration during the <u>Varner</u> litigation, which is when the arbitration agreement was put into place, an argument could be made for interfering with class actions and the judicial process. That is not the case here because the agreement was in place before this litigation started.

2. <u>Adhesion Contract</u>

Plaintiff also argues that "the arbitration agreement is an unenforceable contract of adhesion that restricts [him] to a forum where the expense of pursuing his claim far exceeds the amount in controversy." (Pl.'s Resp. in Opp'n to Mot. to Compel Arbitration, at 1.) The Court notes that this assertion is made in Plaintiff's summary in his opposition to Defendant's motion to compel arbitration, but not much additional argument is provided. Despite this, the Court addresses the argument.

The terms of the arbitration agreement include a provision that "[t]he Company shall pay all costs of arbitrating claims, including the regular and customary arbitration fees and expenses,

---

² See <u>Varner v. Hire Technologies, Inc.</u>, No. 1:19-cv-145 (S.D. Ga. 2019).

7

but not including the attorneys' fees of the respective parties except as otherwise provided by statute." (Doc. 14-1, at 10, ¶ (h).) It further specifies that "each party shall pay its own attorneys' fees and any costs that are not incurred in the actual arbitration of claims (i.e., costs that each party would incur if the claim(s) were litigated in a court . . . such as costs to subpoena witnesses and or/documents . . . etc.)." (Id.) Based on these terms, Plaintiff will not be required to pay anything more to proceed through arbitration than he would through litigation, as he will only be paying his attorney's fees and extra costs. Therefore, this argument fails to prove the contract is one of adhesion with regard to the associated fees. Plaintiff moves further into additional arguments about unconscionability of the contract, separate from the associated fees, which the Court will address in the next section.

3. Unconscionable under Alabama Law

Plaintiff contends the arbitration agreement is unconscionable under Alabama law because (1) it contains a class action waiver, (2) the agreement gives Defendant the unilateral right to use the arbitration agreement as a defense, but does not afford Plaintiff the same right, (3) Defendant reserves the right to assign its rights/obligations to any party, but does not afford Plaintiff the same right, (4) it does not contain an opt-out provision, and (5) the agreement is retroactive.

As noted above, state law governs whether an enforceable arbitration agreement exists, and the arbitration agreement here explicitly states it is governed by Alabama law. (See Doc. 14-1, at 11, ¶ (m).) Although the case was filed in Georgia, absent public policy concerns, Georgia courts normally enforce contractual choice-of-law provisions. See Kellogg v. Food Serv. Supplies, Inc., 541 S.E. 2d 683, 684 n.5 (Ga. Ct. App. 2000) (citations omitted). Not finding any public policy reasons to the contrary, the Court will enforce the arbitration agreement's choice of law provision and interpret the contract in accordance with Alabama law.

Under Alabama law, "agreements to arbitrate are not in themselves unconscionable." Ex parte McNaughton, 728 So.2d 592, 598 (Ala. 1998). The Alabama Supreme Court has also held that "[b]oth substantive unconscionability and procedural unconscionability must be shown to establish unconscionability as a defense to an arbitration provision; these are separate, independent elements." SCI Ala. Funeral Servs., LLC v. Hinton, 260 So.3d 34, 41 (Ala. 2018) (citing Blue Cross Blue Shield of Ala. v. Rigas, 923 So.2d 1077, 1087 (Ala. 2005)).

a. *Substantive Unconscionability*

Substantive unconscionability "relates to the substantive contract terms themselves and whether those terms are unreasonably favorable to the more powerful party." Rigas, 923 So.2d at 1086 (citations omitted).

9

Plaintiff argues that the agreement containing a class action waiver makes it unenforceable but provides no additional argument beyond this statement as to how this waiver makes the agreement unreasonably favorable toward Defendant.[3] Alabama courts have held that "[c]lass action waivers in arbitration agreements are enforceable." Powell v. AT&T Mobility, LLC, 742 F. Supp. 2d 1285, 1291 (N.D. Ala. 2010) (citing Caley, 428 F.3d at 1378; Randolph v. Green Tree Fin. Corp., 244 F.3d 814, 819 (11th Cir. 2001)). The enforceability of a particular class action waiver must be done on a case-by-case basis, considering the fairness of the provision, cost to plaintiff pursuing the claim, the ability to recover fees and costs, the practical effect of the waiver on a company's ability to engage in "unchecked market behavior," and other public policy concerns. Id. at 1291-92 (citing Dale v. Comcast Corp., 498 F.3d 1216, 1221 (11th Cir. 2007)). As stated above, Defendant has included in the agreement a requirement that the company pay all costs associated with arbitration aside from attorney's fees and costs not incurred in the actual arbitration. With regards to the other factors, Plaintiff provides no substantive arguments as to how this waiver is unreasonably favorable towards Defendant.

---

[3] If Plaintiff wants to further challenge the class action waiver, it must be done in court rather than arbitration, and the arbitration agreement specifies venue is proper in federal and state courts located in Alabama. (Doc. 14-1, at 11, ¶ (m).) Based on this venue requirement, the Court simply addresses this argument for the sake of compelling arbitration but does not go further into any challenge to the class action waiver as venue is not proper in this Court to do so.

10

Plaintiff also argues Defendant has a unilateral right to use the agreement that is not given to Plaintiff. (See Doc. 14-1, at 10, ¶ (g) (stating Hire is entitled "to enforce this Agreement, including Employee's agreement to arbitrate all claims and to forego pursuing any covered dispute on a class, collective or representative basis, and is entitled to seek dismissal of any such class, collective or representative action and otherwise assert this Agreement as a defense in any proceeding.").) Plaintiff further argues Defendant reserves the right to assign its rights and obligations but does not afford him that same right. (See id. ¶ (k) (stating Hire can assign its rights or obligations to any party at any time and that employee cannot assign the agreement without prior written consent of Hire).) The arbitration agreement is a mutual agreement, and paragraph (a) states that both Hire and employee voluntarily waive all rights to litigation or trial in court on all legal claims between them, meaning that the agreement does apply to both of them. Further, from a business perspective, the assignment provision is logical because Hire might sell and subsequently transfer employee contracts to the new owners. Conversely, Plaintiff, and other employees, are not going to transfer their job contracts to people who have not been hired without the permission of Hire. Based on this practicality, it is not unreasonable to include the assignment provision in the agreement. Therefore, despite asserting these claims in his opposition to Defendant's motion to compel, Plaintiff offers no

11

argument as to how these aspects of the agreement rise to the level of *unreasonably* favorable to Defendant. Consequently, the Court finds Plaintiff failed to carry his burden of showing that the arbitration agreement is substantively unconscionable.

b. *Procedural Unconscionability*

Procedural unconscionability "deals with procedural deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms, today often analyzed in terms of whether the imposed-upon party had meaningful choice about whether and how to enter into the transaction." Rigas, 923 So.2d at 1087. Plaintiff argues that the arbitration agreement does not contain an opt-out provision and that it was retroactive, going to the procedural aspects of the agreement. Beyond these assertions, Plaintiff again offers no additional facts to support his claims.

Simply because the agreement does not have an opt-out provision and can be applied retroactively does not make it unconscionable. The Eleventh Circuit does not prevent arbitration agreements from being applied retroactively, especially when the language of the agreement makes clear how it is to be applied, as it does here.[4] See Dasher v. RBC Bank (USA), 882 F.3d 1017, 1022 (11th Cir. 2018) (finding retroactive application was improper

---

[4] The Mutual Arbitration Agreement clearly states it applies to all legal disputes, controversies and claims between Hire and employee, including without limitation any claims relating to or occurring during Employee's past, present or future application/assignment/employment or separation thereof. (Doc. 14-1, at 9, ¶ (a).)

12

simply because of a failure to communicate the retroactive aspect of the agreement). The Eleventh Circuit reasons that "[a]rbitration, after all, 'is simply a matter of contract' such that parties cannot be required to arbitrate a matter unless they have agreed to arbitration." Id. (citing Dasher v. RBC Bank (USA), 745 F.3d 1111, 1116 (11th Cir. 2014)). Following this reasoning, the Court finds that Plaintiff, by signing the agreement, agreed to the retroactive effect, and therefore cannot now challenge it.

Further, opt-out provisions are not necessary to establish a binding arbitration agreement. As noted in the terms of the employee agreement, by signing the agreement, Plaintiff represented that he understood the terms and had an opportunity to ask questions and review the agreement with legal counsel before voluntarily signing the agreement. There is no evidence or argument presented to suggest that Plaintiff was forced into this and that an opt-out provision would have saved him from the arbitration agreement. Defendant gave him an opportunity to ask questions and seek the help of an attorney, and had there been concerns with the agreement, that would have been the time to raise them, not at this point after the contract has already been signed.

Alabama precedent holds that when plaintiff offers no evidence indicating he lacked a meaningful choice in signing the arbitration agreement or that the company exercised overwhelming bargaining power, there is not a sufficient showing that the arbitration agreement is procedurally unconscionable. Ryan's

13

Family Steakhouse, Inc. v. Kilpatric, 966 So.2d 273 (Ala. Civ. App. 2006). The agreement here clearly states that by entering into it, the employee "warrants and agrees that he [] has read and understands the Agreement and has had the opportunity to consult with an attorney" and he acknowledges he "is knowingly and voluntarily waiving the right to file a lawsuit relating to [his] employment with the Company." (Doc. 14-1, at 10, ¶ (1).) Plaintiff therefore voluntarily entered into this arbitration agreement, and since he has offered no sufficient proof that it is both substantively and procedurally unconscionable, he is bound by it.

## C. Plaintiff's Request to Conduct Discovery

As a last resort, Plaintiff requests permission to conduct discovery regarding Defendant's implementation of the arbitration agreement, citing Eleventh Circuit precedent. In the cited precedent, the Eleventh Circuit found the district court should have held an evidentiary hearing instead of making fact findings based on inferences from dates rather than live testimony. Carter v. Doll House II, Inc., 608 F. App'x 903, 904 (11th Cir. 2015).

As with the Billingsley case, the Carter case presents a different factual scenario than the one at issue here. In both Billingsley and Carter, the arbitration agreements were put into place *after* the pending litigation had already been filed, and the decisions are based on the timing of the arbitration agreement implementation. Here, Plaintiff signed the arbitration agreement

14

at issue six months before the complaint in this suit was filed. The arbitration agreement (Doc. 14-1) with Plaintiff's signature is dated November 21, 2019, and the complaint (Doc. 1) was not filed until May 26, 2020. The Court therefore finds there is no need for discovery to be used in the way it was in the Carter case as the factual scenarios are completely different. Plaintiff offers no other explanation for pursuing discovery beyond stating it should be allowed as indicated by the Eleventh Circuit precedent. Therefore, Plaintiff's request to conduct discovery regarding Defendant's adoption of its arbitration policy is **DENIED**.

**D. Stay Pending Arbitration**

Defendant requests the Court stay the case pending arbitration, enabling the Court to enforce an arbitration award and rule on the class waiver if necessary. (Doc. 13, at 3.) The FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Pursuant to the FAA's language, the Court finds it is proper to grant Defendant's request to stay this action pending arbitration of Plaintiff's claims.

15

## IV. CONCLUSION

The Court **GRANTS** Defendant Hire's motion to compel arbitration and stay pending arbitration. (Doc. 13.) **IT IS HEREBY ORDERED** that (1) Plaintiff and Defendant **SHALL ARBITRATE** the complaint; and (2) the entire case is **STAYED** pending arbitration. Plaintiff and Defendant **SHALL** file a joint status report with the Court every **ONE HUNDRED AND TWENTY (120) DAYS** until the arbitration has concluded.

**ORDER ENTERED** at Augusta, Georgia, this 20th day of January, 2021.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA